Marjory K. Hatch, et al. [1] v. Commissioner. Hatch v. Commissioner
Docket Nos. 44563, 44591, 46137, 46176.
United States Tax Court
T.C. Memo 1954-8; 1954 Tax Ct. Memo LEXIS 239; 13 T.C.M. (CCH) 371; T.C.M. (RIA) 54114; April 14, 1954, Filed *239 Joseph H. B. Edwards, Esq., for the petitioners Marjory K. Hatch (Docket No. 44563), Charles F. Kennard (Docket No. 44591), and Helen G. Kennard (Docket No. 46176). Bertram H. Loewenberg, Esq., for the petitioners John S. Kennard and Elizabeth E. Kennard (Docket No. 46137). Paul J. Henry, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies in income tax for 1947 of $1,187.28 against Marjory K. Hatch, $995.09 against Charles F. Kennard, $1,284.05 against John S. and Elizabeth E. Kennard and $911.94 against Helen G. Kennard. The only issue for decision is whether the retirement in 1947 of preferred stock held by the petitioners was at such time and in such manner as to make the redemption essentially equivalent to the distribution of a taxable dividend within the meaning of section 115(g). The facts have been presented by stipulations which are adopted as the findings of fact. The petitioners, with the exception of Elizabeth, the wife of John, are brothers and sisters. Charles and Helen filed their returns with the collector of internal revenue for the Second District of New York and the other two returns *240 were filed with the collector of internal revenue for the District of Massachusetts. Kennard & Co., Inc., formerly Hodgson, Kennard & Co., Inc. (hereafter called the corporation) is a corporation which has engaged in the retail jewelry business in Boston and vicinity since 1906. Arthur W. Kennard, the father of four of the petitioners, purchased 300 shares, or one-half, of its common stock and 50 shares of its preferred stock, each at its $100 par value, when the corporation was organized. A trustee for the mother of four of the petitioners loaned $29,000 to the corporation between 1906 and 1908 and in the latter year received 290 shares of its preferred stock in cancellation of the loans. The mother loaned the corporation $50,000 and thereafter in 1914 received 500 shares of its preferred stock in cancellation of that loan. Trustees under the mother's will loaned the corporation more than $43,000 from 1914 to 1919 and in the latter year received 437 shares of the preferred stock in cancellation of those loans. The investments by the trustees were not intended to be permanent. Thirty shares of the preferred stock of the corporation held by the trustees were redeemed in 1921 and *241 the trustees insisted in 1924 that a plan be made to retire the preferred stock. The corporation adopted a plan in 1926 to retire up to 500 shares of its preferred stock out of earnings and 93 shares of the preferred held by the trustees was retired in 1926. A sinking fund plan to retire preferred stock was adopted in 1927 but due to losses thereafter no money was allocated to the fund. Arthur died in 1937 and the trust under the mother's will terminated. Each petitioner received, as a result of those events, 75 shares of common and 286 shares of preferred stock of the corporation in 1937. Hodgson and petitioner John S. Kennard were active in the business from 1937 to 1943. Unpaid accumulated dividends on the preferred stock amounted to $85 per share at the beginning of 1943. The corporation wrote a letter to the stockholders on June 10, 1943 advising them of a contemplated reorganization of the corporation. It stated that Hodgson desired to retire and an agreement had been reached with him by which the corporation would buy his one-half of the common stock (300 shares) and 109 shares of preferred stock for $65,000 to be borrowed from banks. It advised that the loan would be repaid *242 "by establishing a liquidating account to which will be credited the inventory value of all merchandise sold" which had averaged $100,000 annually and "It is then planned to continue the liquidation account to acquire funds for the adjustment of cumulative dividends and the redemption of the preferred stock in whole or in part as stockholders may elect." The purchase of the stock from Hodgson was carried out prior to June 15, 1943 by payments of $105 per share for the preferred stock and the balance of the purchase price for the common stock. Hodgson then retired from the corporation. The directors of the corporation on January 17, 1944 took steps to acquire 190 shares of preferred stock, being the only stock then outstanding not owned by the petitioners, and shortly thereafter the corporation acquired the 190 shares of preferred stock at $142.50 per share, representing $100 per share for the stock and $42.50 per share accepted by the sellers in full payment of the accumulated dividends of $85 per share. The stockholders of the corporation held a meeting on May 29, 1944 at which they voted to amend the Agreement of Association and Articles of Organization to provide that the *243 preferred stock could be called at $100 per share with accrued dividends, all calls should in proportion to the total held by each stockholder and the dividend rate on the preferred stock be reduced from 7 per cent to 5 per cent. John proposed to his brother and sisters in the latter part of 1944 that he or the corporation acquire enough common stock of each to give him control of the corporation. The three nonactive stockholders employed counsel who made counterproposals that control would be thus transferred on condition that $42.50 per share be paid to each of the three in discharge of the accumulated dividends of $85 per share on the preferred stock and that suitable arrangements be made to protect the preferred stockholders and eventually to retire the preferred stock, including the right to elect one-third of the directors, the establishment of a sinking fund from earnings and the retirement of the preferred stock therefrom as soon as possible. John agreed and the $42.50 per share was paid to the nonactive stockholders. The corporation acquired 110 shares and John acquired 40 shares of common stock from the other three stockholders so that on July 1, 1946 he owned 115 shares *244 and each of the other three owned 25 shares of common while each continued to own 286 shares of preferred. The price paid for the common stock was $300 per share. The stockholders at a meeting in September 1945, at which the plan was agreed to, voted to ratify and approve amendments to the Agreement of Association and Articles of Organization provided that the Board of Directors would create a preferred stock sinking fund by paying to a bank not less than 50 per cent of the net profits of the corporation after taxes and after 5 per cent dividends on the preferred stock and restricted dividends on the common stock. The deposits to the account were to be made on or before May 1st and on or before December 1st of the same year, the amount in the sinking fund was to be used to acquire preferred stock at $100 per share plus accrued dividends. The corporation, on April 29, 1947, in view of an existing sinking fund requirement of approximately $16,000, voted to acquire 160 shares of the preferred stock at $100 per share consisting of 40 shares owned by each of the petitioners and it actually acquired those shares in 1947. John was the only member of the family actively engaged in the *245 conduct of the business or in the management of the corporation after the retirement of Hodgson in June 1943 and thereafter became the sole manager of the business. He felt that since he had the responsibilities of the business he should control it and be the principal beneficiary of it. The other petitioners were willing to accede to his wishes upon the agreed conditions. The Commissioner, in determining the deficiencies, added $3,600 to the income reported on each return for 1947 on the ground that the redemption of the preferred stock was at such time and in such manner as to make the distribution and redemption in whole essentially equivalent to the distribution of a taxable dividend within the meaning of section 115(g). The preferred stock that was retired in 1947 was, for the most part, issued many years previously in cancellation of loans with an understanding at that time that the investments were not permanent. The corporation had almost consistent losses after 1929 and until 1942 as a result of which it was unable to carry out plans to retire the preferred stock. Hodgson retired in 1943 leaving John as the sole manager of the business. His desire to control the voting *246 stock of the corporation led to the creation of a plan for the retirement of the preferred stock under which the 1947 retirement took place. The stipulated facts as a whole do not support the determination of the Commissioner but, on the contrary, support the contention of the petitioners that this was in no sense a disguised dividend on the common stock. The redemption of the 160 shares of preferred stock of the corporation in 1947 was not at such time and in such manner as to make the distribution in whole or in part essentially equivalent to the distribution of a taxable dividend. Decisions will be entered for the petitioners. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Marjory K. Hatch, Docket No. 44563; Charles F. Kennard, Docket No. 44591; John S. Kennard and Elizabeth E. Kennard, Docket No. 46137; and Helen G. Kennard, Docket No. 46176.↩